**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:21-cv-01849-DCN |
| vs. ) | |
| ) | **ORDER** |
| MCCABE TROTTER & BEVERLY, PC and ) | |
| TAMMY C. RICHARDSON, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The following matter is before the court on defendant Tammy C. Richardson's ("Richardson") motion to dismiss, ECF No. 5. For the reasons set forth below, the court grants the motion and dismisses the action without prejudice.

## I.  BACKGROUND

Defendant McCabe Trotter & Beverly, PC ("McCabe Trotter") regularly represents homeowner's associations ("HOAs") in efforts to collect past-due assessments from homeowners. In connection with its collection efforts, McCabe Trotter charges various fees, including an initial $65 flat fee to send a letter to the homeowner notifying the homeowner of the past-due assessment. If and when McCabe Trotter takes additional steps to collect the debt—for example, by sending a notice of a lien or filing a foreclosure action—the HOA incurs additional set charges for each task. McCabe Trotter allegedly does not bill the HOA directly for amounts in excess of the initial $65 fee; rather, McCabe Trotter adds those fees to the debt it seeks to collect from the homeowner.

McCabe Trotter has professional liability insurance policies with Continental Casualty Company ("Continental"). The first policy at issue is for the policy period of

1

August 13, 2015 to August 13, 2016 (the "15-16 Policy"), ECF No. 1-10, and the second is for the period of August 13, 2016 to August 13, 2017 (the "16-17 Policy"), ECF No. 1-11 (together, the "Policies"). The Policies provide specified coverage amounts that McCabe Trotter "shall become legally obligated to pay as damages and claims expenses because of a claim that it both first made against the Insured and reported in writing to [Continental] during the policy period by reason of an act or omission in the performance of legal services[.]" ECF No. 1-10 at 11; ECF No. 1-11 at 10. For example, the Policies provide a $2 million coverage limit for a "single claim." ECF No. 1, Compl. ¶ 44.

Certain South Carolina homeowners, including Richardson, filed state court actions against McCabe Trotter regarding its debt collection practices, particularly its inclusion of its attorneys' fees in the represented amount of the homeowners' purported debts (the "Underlying Actions"). According to Continental, three of these actions have been fully resolved by settlement, one has been dismissed without prejudice, and Richardson's state court action remains pending.

On June 18, 2021, Continental filed the instant declaratory judgment action against McCabe Trotter and Richardson, seeking judicial determination of its coverage obligations under the Policies for the Underlying Actions. Compl. Specifically, Continental seeks a declaration that (1) the Richardson action is not covered by the 16-17 Policy because the claim was not made and reported during that coverage period; (2) the Richardson action is a "single claim" under the 15-16 Policy and thus subject to a $2 million claim limit; and (3) all Underlying Actions together are a "single claim" and thus are collectively subject to a $2 million claim limit under the 15-16 Policy. Id. ¶ 3.

On July 1, 2021, Richardson filed a motion to dismiss. ECF No. 5. On July 14, 2021, Continental responded in opposition, ECF No. 12, and on July 21, 2021, Richardson replied, ECF No. 13.[1] As such, this motion has been fully briefed and is now ripe for review.

## II. STANDARD

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction," a district court "may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a) (emphasis added). "It is axiomatic that the Act does not supply its own jurisdictional base, and where jurisdiction is lacking, declaratory relief should be denied." Delavigne v. Delavigne, 530 F.2d 598, 601 (4th Cir. 1976); see also U.S. Const. art. III, § 2, cl. 1 (limiting the jurisdiction of federal courts to "[c]ases" and "[c]ontroversies").

"The test for a case or controversy . . . is whether the dispute is definite and concrete, touching the legal relations of parties having adverse legal interests." Commercial Union Ins. Co. v. Detyens Shipyard, Inc., 147 F. Supp. 2d 413, 420–21 (D.S.C. 2001) (internal quotation marks omitted). "In deciding whether a justiciable controversy exists, a district court looks to whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. at 421 (internal quotation omitted). The justiciability doctrines of standing and ripeness, which are "drawn from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction," guide

---

[1] McCabe Trotter did not respond to the motion.

the court in determining whether an actual controversy exists. Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n.18 (1993); see also Bryant v. Cheney, 924 F.2d 525, 529 (4th Cir. 1991) ("Doctrines like standing . . . and ripeness are simply subsets of Article III's command that the courts resolve disputes, rather than emit random advice.").

"In order to show Article III standing, a plaintiff is always required to show an injury in fact." Meyer v. McMaster, 394 F. Supp. 3d 550, 559 (D.S.C. 2019). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "Ripeness is peculiarly a question of timing." Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580 (1985) (internal quotation marks omitted). The doctrine is "one of indefinite contours, especially when considered in conjunction with a declaratory judgment action." Warner Cable Commc'ns, Inc. v. Borough of Schuylkill Haven, 784 F. Supp. 203, 206 (E.D. Pa. 1992). However, "a declaratory judgment may not be given for a purely hypothetical situation [or as] . . . an advisory opinion." A.S. Abell Co. v. Chell, 412 F.2d 712, 719 (4th Cir. 1969). If a plaintiff does not have standing or the controversy is not sufficiently ripe, the court must dismiss the action for lack of subject matter jurisdiction.

### III. DISCUSSION

Richardson moves to dismiss the action for lack of subject matter jurisdiction. Specifically, Richardson argues that Continental fails to plead a justiciable controversy under Article III. Continental, on the other hand, argues that, because Richardson

4

disputes its position that all Underlying Actions represent a "single claim," a controversy exists "regarding the extent of coverage available for the Richardson Action." ECF No. 12 at 6. The court agrees with Richardson and finds that this dispute falls short of the standing and ripeness requirements of Article III.

In <u>Trustgard Ins. Co. v. Collins</u>, the Fourth Circuit emphasized the importance of standing and ripeness in the declaratory judgment context. 942 F.3d 195, 198 (4th Cir. 2019). There, an insurer sought a declaration related to the coverage available for damages in a personal injury action that was being litigated in state court. <u>Id.</u> at 197–99. A driver and passenger were injured when the driver rear-ended a car trailer being towed by a tow truck. <u>Id.</u> at 197. The passenger brought a state court lawsuit against several different parties, one of which was Michael Brown ("Brown"). Brown's only connection to the accident was his Interstate Commerce Commission number appearing on the tow truck involved in the accident. <u>Id.</u> at 198. Brown's insurer brought a federal declaratory judgment action, asking "the federal district court to declare whether it must pay any judgment against Brown if [the passenger] prevails in state court." <u>Id.</u> The district court decided the question on the merits, and the passenger appealed to the Fourth Circuit.

On appeal, the Fourth Circuit expressed serious concerns over whether the insurer had standing to bring the action and whether the claim was ripe. <u>Id.</u> at 199–201. It noted that the doctrines of ripeness and standing "ensure that we do not exceed the limits of Article III jurisdictional power, and so guard against [the] rendering of an opinion advising what the law would be upon a hypothetical set of facts." <u>Id.</u> at 200 (citations omitted). The Fourth Circuit found that the insurer's alleged injury—"that it might have to guarantee a future judgment"—"is of a hypothetical and contingent nature: the injury

5

may or may not occur depending on the outcome of the state lawsuit." Id. If the passenger was unsuccessful in the state-court action, a decision by the district court regarding the insurer's obligation to indemnify would have no effect and the "risk[ed] issuing an advisory opinion." Id. In closing the Article III analysis, the Fourth Circuit cautioned:

> Although we recognize how valuable it might be for the parties to know an insurer's obligations before liability is resolved, practical value cannot overcome this fundamental limitation on our jurisdiction.

Id. at 201. Ultimately, the Fourth Circuit did not resolve the constitutional question and decided the case on other grounds. Still, courts since have found Trustgard's Article III jurisdictional analysis instructive on whether similar jurisdictional problems exist in pending insurance coverage cases. See, e.g., Progressive N. Ins. Co. v. Atkinson, 2020 WL 6498886, at *3 (D.S.C. Sept. 30, 2020) (collecting cases).

Having considered the positions of the parties and the relevant case law, the court finds that the same concerns expressed by the Fourth Circuit in Trustgard exist here. Continental's first requested declaration, that the Richardson action is not covered by the 16-17 Policy, is of the same vein as the coverage declaration at issue in Trustgard. Without a liability determination in the Richardson action, Continental's alleged injury—the duty to indemnify McCabe Trotter under the 16-17 Policy for Richardson's damages[2]—is hypothetical and contingent in nature. If this court declared that the 16-17 Policy does not provide coverage for the Richardson action, and McCabe Trotter is subsequently cleared of liability in that action, this court's decision "would be merely

---

[2] Continental does not dispute its duty to defend Richardson in the state court action, and therefore Continental rightfully does not rely on this duty to establish standing in this case.

6

advisory and have no 'real world impact.'" Am. Millennium Ins. Co. v. USA Freight Sols., Inc., 2020 WL 733839, at *3 (M.D.N.C. Feb. 13, 2020); see Trustgard, 942 F.3d at 200.  Because the Fourth Circuit in Trustgard strongly suggested Article III jurisdictional concerns in such a scenario, the court declines to exercise its jurisdiction under the Declaratory Judgment Act with respect to this request.

Continental also seeks declarations from this court that its coverage obligation for all damages and claim expenses arising from the Underlying Actions, including the Richardson state court action, is limited to $2 million.  By analogy to Trustgard, the court also declines to exercise its discretion to entertain these declaratory judgment requests. At this time, it is unclear whether Continental will accrue over $2 million in damages and claim expenses in connection with the Underlying Actions.  While three of the Underlying Actions have settled, Continental does not argue that the amounts for which it must indemnify McCabe Trotter under the settlement agreements approach $2 million. According to the complaint, the only outstanding Underlying Action against McCabe Trotter is Richardson's pending state court action.  As already noted, McCabe Trotter's liability in that action, and by extension Continental's obligation to provide coverage for Richardson's alleged damages, has not yet been determined.  And while Continental avers that the alleged $2 million liability limit is "currently being eroded by payment of claim expenses in the Richardson Action and the other [Underlying Actions]," Continental does not provide any information regarding the amount of those "expenses" or otherwise argue that they will imminently cause Continental's coverage obligations to exceed $2 million.  ECF No. 12 at 9.  In other words, the injury to Continental— payment of over $2 million in coverage for allegedly "related claims"—is too

7

hypothetical and contingent in nature to establish standing for these declaration requests after Trustgard. Indeed, on the face of its complaint, Continental alleges only that it "may" suffer an injury in the event judgment is entered in Richardson's favor in her underlying state action. See Compl. ¶ 2 ("An actual and justiciable controversy has arisen and now exists relating to the parties' respective rights, duties and obligations under the Policies in connection with any judgment that may be entered against McCabe Trotter in the [Richardson action.]") (emphasis added). Just as in Trustgard, this "injury may or may not occur depending on the outcome of the state lawsuit." Trustgard, 942 F.3d at 200. And following Trustgard, such a contingent injury is most likely insufficient to establish injury in fact.

For similar reasons, these declaration requests are unripe for adjudication. The Trustgard decision cautioned that judgment on the duty to indemnify prior to the resolution of an insured's liability may be premature and potentially advisory. Id. at 199-200. Likewise, this court would risk issuing an advisory opinion if it entered judgment on Continental's coverage limit for the Underlying Actions before damages and expense claims accrue to that limit. For example, if judgment in Richardson's state action is entered in McCabe Trotter's favor without significant further expense, Continental would not face claims in connection with the Underlying Action in excess of $2 million. In that scenario, a declaration from this court limiting Continental's coverage obligation with respect to all Underlying Actions to $2 million would be irrelevant. Thus, exercising discretion to hear this declaratory judgment action at this time could raise serious, unresolved questions about Article III jurisdiction. See id. at 204–05 (Harris, J. concurring) (noting that "[i]t may be that the courts ultimately will conclude that there is

no subject matter jurisdiction over duty-to-indemnify claims absent a finding of liability," but for now, the question of subject matter jurisdiction is "far from settled").

This court, like the Fourth Circuit in Trustgard, recognizes "how valuable it might be" for the parties to know Continental's coverage obligations under the Policies, including in the parties' settlement efforts in the Richardson action. Id. at 201. However, "practical value cannot overcome this fundamental limitation on [ ] jurisdiction." Id. In light of the court's questionable Article III jurisdiction and its concern that the case could consume judicial resources to produce a decision that may be merely advisory, the court declines to exercise its discretion under the Declaratory Judgment Act to hear this case. The court therefore dismisses the action without prejudice. See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

Richardson further requests that the court grant her attorneys' fees pursuant to 28 U.S.C. § 1927 and the court's inherent power. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United states or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The focus of § 1927 is on the attorney's conduct of the litigation, rather than on the merits. DeBauche v. Trani, 191 F.3d 499, 511–12 (4th Cir. 1999). An award by the court of attorneys' fees under this section is for conduct "more egregious" than behavior sanctionable under Rule 11. O'Rourke v. City of Norman, 640 F.Supp. 1451 (W.D.

9

Okla. 1986), rev'd on other grounds, 875 F.2d 1465, cert. denied, 493 U.S. 918.  The Fourth Circuit has held that a finding of bad faith is a necessary precondition to imposition of fees on an attorney under § 1927.  Brubaker v. City of Richmond, 943 F.2d 1363, 1382 n. 25 (4th Cir. 1991).  The award of sanctions under § 1927 falls within the sound discretion of the district court.  See Chaudhry v. Gallerizzo, 174 F.3d 394, 410 (4th Cir. 1999).  The decision of a district court to award sanctions is entitled to substantial deference because the district court "is in the best position to review the factual circumstances and render an informed judgment as it is intimately involved with the case, the litigants, and the attorneys on a daily basis."  Blue v. U.S. Dep't of Army, 914 F.2d 525, 538 (4th Cir. 1990) (internal quotations omitted).

In addition to the authority granted under 28 U.S.C. § 1927, this court also possesses "the inherent authority in appropriate cases to assess attorneys' fees and impose other sanctions against a litigant or a member of the bar who has acted in bad faith, vexatiously, wantonly, and for oppressive reasons.'"  Williams v. Family Dollar Servs., Inc., 327 F.Supp.2d 582, 585 (E.D. Va.2004) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)).  "The bad faith exception for the award of attorneys' fees is not restricted to cases where the action is filed in bad faith. '[B]ad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.'"  Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980) (quoting Hall v. Cole, 412 U.S. 1, 15 (1973)).  This court has the power to invoke its inherent authority to sanction an attorney's conduct "even if procedural rules exist which sanction the same conduct."  Chambers, 501 U.S. at 49.

Richardson argues that counsel for Continental has engaged in vexatious litigation by filing two actions against her, both of which the court lacked jurisdiction to adjudicate. In the first action, Columbia Casualty Co. v. McCabe Trotter & Beverly, PC et al., No. 20-cv-3680-DCN (D.S.C. 2020) (the "Original Action"), counsel inadvertently named Continental's subsidiary, Columbia Casualty Co. ("Columbia"), as plaintiff. Because the Policies were issued by Continental, not Columbia, counsel moved to substitute Continental as the plaintiff by way of an amended complaint or pursuant to Federal Rule of Civil Procedure 17(a). The court found that Columbia could amend its complaint as a matter of course, but expressed concerns that the amended complaint may not remedy the jurisdictional issue stemming from the fact that the misnamed plaintiff lacked standing at the time the action was brought. See Original Action, ECF No. 37. The court requested supplemental briefing on that issue or alternatively invited Continental to dismiss the Original Action and file a new action in its own name to bypass the issue. Id. at 9 n. 2. Continental chose the latter option and moved to dismiss the Original Action. Original Action, ECF No. 42.

The court does not find that plaintiff's counsel's error in naming the wrong plaintiff in the Original Action, or any other conduct in that action, rises to level of bad faith or vexatious litigation. Nor does the court find bad faith in Continental's pursuit of the instant action, notwithstanding the jurisdictional concerns discussed herein. As the court has explained, the question of subject matter jurisdiction in cases similar to the one before the court is unsettled, and Continental's arguments in support of jurisdiction were

not frivolous. Therefore, the extraordinary circumstances necessary to justify a shift in attorneys' fees are not present in this case, and the court denies Richardson's request.[3]

## IV.  CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion and dismisses the action without prejudice and without an award of attorneys' fees.

**AND IT IS SO ORDERED.**

                                    **DAVID C. NORTON**
                                    **UNITED STATES DISTRICT JUDGE**

**August 26, 2021**
**Charleston, South Carolina**

---

[3] For the same reasons, the court declines to award costs or attorneys' fees under Federal Rule of Civil Procedure 41(d). Whether to award costs pursuant to Rule 41(d) is also within the sound discretion of the trial court. Hython v. City of Steubenville, 1996 WL 456032 (6th Cir. Aug. 12, 1996) (citing Wright & Miller, Federal Practice and Procedure: Civil 2d § 2375 at 415 (1995)). Rule 41(d) provides as follows:
> If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied.

Fed. R. Civ. P. 41(d). Costs under Rule 41(d) are "appropriate when the plaintiff acts with vexatious intent or in an attempt to 'gain any tactical advantage by dismissing and refiling this suit.'" Design Res., Inc. v. Leather Indus. of Am, 2015 WL 12752729, at *5 (M.D.N.C. May 19, 2015) (internal citation omitted). To determine if such egregious behavior has taken place, courts look to the history and content of the prior litigation to determine whether it appears that the plaintiff was "forum shopping," seeking to overcome setbacks in the prior litigation, or working to avoid an impending adverse ruling in the prior litigation. See Simeone v. First Bank Nat'l Ass'n, 125 F.R.D. 150, 156 (D. Minn. 1989). As previously noted, Continental dismissed and refiled the action at this court's invitation. Continental has not exhibited behavior warranting an award of costs under Rule 41(d).